# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MURRAY E. TALLMAN, | ) 1:05cv0420 DLB |
| | ) |
| Plaintiff, | ) ORDER REGARDING PLAINTIFF'S |
| | ) SOCIAL SECURITY COMPLAINT |
| v. | ) |
| | ) |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **BACKGROUND**

Plaintiff Murray E. Tallman ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income and disability insurance benefits pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On September 8, 2005, the Honorable Robert E. Coyle reassigned the case to the undersigned for all purposes.

1

# FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed his applications for supplemental security income and disability insurance benefits on April 21, 2003, alleging disability since September 20, 1991, due to a damaged right foot. AR 83-86, 107, 161-164. After being denied both initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 59-62, 64-68, 69. On September 21, 2004, ALJ James P. Berry held a hearing. AR 167-183. On October 26, 2004, ALJ Berry found that Plaintiff was not disabled. AR 15-24. On January 28, 2005, the Appeals Council denied Plaintiff's request for review. AR 7-9.

Plaintiff was previously found disabled for the same impairment and received benefits, but was later found not disabled through a continuing disability review. AR 18. An ALJ found that Plaintiff's disability had ceased in November 1994, with his benefits ending effective January 1995. However, Plaintiff's benefits were continued in error through November 2001. AR 18. When the error was discovered, a second cessation review process was initiated and Plaintiff was found to have improved medically. AR 18. His benefits ceased as of November 2001. AR 18. He appealed the cessation and an ALJ upheld the cessation in a November 21, 2002, decision. AR 18. Plaintiff did not appeal the ALJ decision. AR 18.

Hearing Testimony

ALJ Berry held a hearing on September 21, 2004, in Bakersfield, California. Plaintiff appeared with his attorney, Geoffrey Hayden. Vocational expert ("VE") Ken Ferra also appeared and testified. AR 167.

Plaintiff testified that he was 47 years old and completed the twelfth grade. He has a driver's license but does not drive. He last worked in September 1991, when he was a garbage collector's helper. AR 171. He stopped working because a garbage truck ran over his foot. AR 172. He received a $50,000 workers' compensation settlement from that injury. AR 173.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1 He explained that he could not work now because he would have to elevate his right leg.
2 AR 173.  His right leg swells.  AR 173.  He does not take any pain medication because they were
3 not prescribed.  He rated the daily pain in his right foot as a 7, on a scale of 1 to 10.  AR 174.

4 He estimated that he could walk about five to seven feet before needing to stop because
5 of the pain.  AR 174.  He relieves the pain by taking a break and keeping his right foot off the
6 ground.  AR 174.

7 When questioned by his attorney, Plaintiff testified that no doctor has ever prescribed that
8 he elevate his foot.  AR 175.  Nonetheless, he elevates his feet everyday, which alleviates the
9 swelling.  AR 175.  He watches television during the day and does his grocery shopping once a
10 week and whatever else he wants to do.  AR 175.  He is supporting himself on disability
11 payments from the State and money from his mother.  AR 175.

12 Plaintiff estimated that he could lift about five pounds maximum, because lifting more
13 could damage his foot.  AR 176.  He later stated that he could lift and carry five to ten pounds.
14 AR 179.  He can stand for a couple of minutes before needing to sit, and can sit for about five
15 minutes before needing to stand.  AR 176.  He cannot kneel, stoop or squat without pain.  He
16 does a little vacuuming and heats food up everyday.  He does the grocery shopping and does not
17 have trouble dressing or grooming himself.  AR 176. He occasionally visits friends and delivers
18 Campbell Soup labels for education to his school district every year.  AR 177.  He uses the bus to
19 get to the grocery store and carries the groceries into his apartment.  AR 178.

20 For the first hypothetical, the ALJ asked the VE to assume an individual of Plaintiff's
21 age, education and past relevant work experience.  This person had the RFC to lift and carry 10
22 pounds occasionally, and up to 10 pounds frequently.  This person can stand and walk for two
23 hours, and sit for six hours.  This person cannot climb ropes, ladders or scaffolds, and can
24 occasionally balance and forcefully push and pull with the right lower extremity.  The VE
25 testified that this person could not perform Plaintiff's past relevant work, but could perform the
26 positions of cashier, hand packer, and assembler.  AR 180-182.

27 For the second hypothetical, the ALJ asked the VE to assume an individual with the RFC
28 to stand for less than one hour, sit for less than one hour, and walk five or ten feet.  This person

could lift and carry five to ten pounds, and must elevate the lower right extremity. The VE testified that this person could not perform any work in the national economy. AR 182.

Medical Record

July 31, 2003, x-rays of Plaintiff's right foot revealed an old fracture of the tarsal bone transfixed with a broken screw, but no recent fracture or dislocation. There was no definite inflammatory process or sign of osteomyelitis. AR 133.

On August 6, 2003, Jonathan M. Gurdin, M.D., performed an orthopedic evaluation. Plaintiff explained that in September 1991, the front tire of a garbage truck ran over his right foot. He sustained a fracture of the navicular and after surgery to place a single screw, the fracture healed adequately. X-rays taken on August 3, 2003, revealed that the screw was broken in its mid-portion and calcification around the fracture line. AR 131. Plaintiff complained of constant slight aching in the right foot since the accident, which worsens with walking and standing. There is no worsening of the pain while walking on uneven ground.

Upon examination, Plaintiff demonstrated a marked right-sided antalgic limp while in the examining room. When he left the examination room, he was able to walk at a normal pace with only a slight right-sided limp. On examination of the right foot, subtalar motion was restricted, but the ankle was nontender and there was no restriction of motion. AR 132. Dr. Gurdin diagnosed a prior fracture of the right tarsal navicular with ORIF and symptom magnification. He explained that Plaintiff was able to walk with only a slight limp when he left the office, making the severe limp appear to be a considerable exaggeration. AR 132. Plaintiff did have restriction of subtalar motion, and Dr. Gurdin opined that he would probably benefit from further surgery. AR 132. Dr. Gurdin opined that he could be on his feet for 60 to 90 minutes at a time and for four to five hours out of eight hours. Sitting was not restricted. He could lift and carry 30 pounds occasionally and 15 pounds frequently. AR 132.

On September 2, 2003, a State Agency physician completed a Physical Residual Functional Capacity Assessment form. The physician opined that Plaintiff could occasionally lift and carry 30 pounds, 15 pounds frequently, could stand and/or walk at least two hours in an eight hour workday (60-90 minutes at a time, with 5 minutes rest in between), could sit for about six

hours, and could not perform forceful pushing or pulling with the right lower extremity. He could frequently climb ramps and stairs, but could never climb ladders, ropes or scaffolds. He could occasionally balance. Plaintiff had to avoid concentrated exposure to hazards and had to avoid uneven terrain. AR 152-159.

Plaintiff underwent x-rays of his right ankle on November 6, 2003. The x-rays revealed degenerative changes of the right talonavicular and first naviculocuneiform joint, with a screw stabilizing the structures, a small bony spur at the posterior right calcaneus, and diffuse osteopenia at the right talus, right calcaneus and the right cuboid. AR 135.

On December 15, 2003, State Agency physician Keith M. Quint, M.D., completed a Physical Residual Functional Capacity Assessment form. He opined that Plaintiff could occasionally lift and carry 20 pounds, 10 pounds frequently, could stand and/or walk a total of four hours in an eight hour workday, could sit for a total of six hours, and was unable to operate foot controls with the right foot. He could occasionally climb ramps and stairs, but could never climb ladders, ropes or scaffolds. AR 142-149.

On August 24, 2004, Plaintiff's treating physician, Nadim Sarkies, M.D., wrote a letter explaining that Plaintiff injured his right foot and has been unable to work since 1991. Plaintiff was diagnosed with a fractured, deformed right foot. Dr. Sarkies indicated that Plaintiff had a permanent disability. AR 160.

ALJ's Findings

The ALJ found that Plaintiff had the severe impairment of being status post right lower extremity fracture with subsequent degenerative changes, but that this impairment did not meet or equal section 1.02 of the Listing of Impairments. AR 20. The ALJ determined that Plaintiff was not credible and gave his testimony no evidentiary weight. Plaintiff had the RFC to perform a wide range of sedentary work. Specifically, Plaintiff could not lift and carry more than ten pounds at a time, stand or walk more than two hours, or sit for more than about six hours in an eight-hour workday. He could occasionally balance and could not use the right lower extremity for forceful pushing or pulling activity. He could not climb ladders, ropes or scaffolding. AR 21.

Based on the testimony of the VE, the ALJ concluded that Plaintiff could perform the positions of cashier, hand packer, and assembler, and that these positions existed in significant numbers in the national economy. AR 23. The ALJ also used Rule 201.21 as a framework for fining Plaintiff not disabled. AR 23.

### SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

### REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[3] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" (being status post right lower extremity fracture with subsequent degenerative changes) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform his past relevant work; but (5) retains the RFC to perform a wide range of sedentary work. AR 22-23.

Plaintiff argues that the ALJ improperly found that Plaintiff's impairment did not equal Listing 1.02A.

## **DISCUSSION**

While Plaintiff agrees with the finding that he does not "meet" any Listing, he contends that the ALJ improperly concluded that Plaintiff did not "equal" any Listing, specifically Listing 1.02A. Plaintiff argues that the ALJ failed to consider the State Agency physician's opinion that Plaintiff had to avoid uneven terrain in making this finding.

The listings of impairments describe impairments "that are considered severe enough to prevent an adult from doing any gainful activity." 20 C.F.R. § 416.925(a). Most of these impairments are permanent or expected to result in death. *Id.* For all other impairments, the evidence must show that the impairment has lasted or is expected to last for a continuous period of at least 12 months. *Id.* If a claimant's impairment meets or equals a listed impairment, he or she will be found disabled at step three without further inquiry. 20 C.F.R. § 416.920(d).

---

[3] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

7

To demonstrate that an impairment matches a listed impairment, the claimant must show that the impairment meets all of the medical criteria in a Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* To "equal" a listed impairment, a claimant must establish symptoms, signs and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment." *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1526(a), 416.926(a). Under the law of this circuit, "[i]t is unnecessary to require the Secretary, as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments." *Gonzales v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir.1990).

Here, Plaintiff points to Listing 1.02A. Listing 1.02 describes listing level severity for individuals who suffer from major dysfunction of a joint characterized by gross deformity, chronic joint pain, stiffness with signs of limitation of motion, and medical findings of joint space narrowing, bony destruction, or ankylosis of the affected joint. Under Listing 1.02A, the affected joint must be one of the major peripheral weight-bearing joints (i.e., hip, knee, or ankle) and result in the inability to ambulate effectively, as defined in Listing 1.00B2b. Listing 1.00B2b(1) defines the inability to ambulate effectively as "an extreme limitation of the ability to walk; i.e, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." As an example of ineffective ambulation, Listing 1.00B2b(2) lists, among other things, "the inability to walk a block at a reasonable pace on rough or uneven surfaces."

At step three, the ALJ found that Plaintiff's right ankle fracture did not meet or medically equal the criteria listed in Listing 1.02. AR 20. The ALJ explained that Plaintiff did not provide acceptable objective medical evidence of gross anatomical deformity, chronic joint pain and stiffness with signs of limitation of motion. AR 20. There were no appropriate medical findings of joint space narrowing, bony destruction, or ankylosis of the affected joint. The ALJ noted that while there was involvement of one major peripheral joint (i.e., right ankle), there was no evidence of an inability to ambulate effectively. AR 20.

Pointing to the example given in Listing 1.00B2b(2), Plaintiff contends this statement was incorrect given the State Agency physician's finding that Plaintiff should avoid uneven terrain. AR 156.

The State Agency physician's finding, which was made in the context of setting forth Plaintiff's environmental work restrictions, was made as part of Plaintiff's RFC finding. In other words, it was not made at step three, where the ALJ determines whether a disability meets or equals a listing. It was made at steps four and five as part of assessing Plaintiff's RFC. Moreover, the ALJ did not accept the physician's limitations.

In any event, even assuming that the ALJ accepted this limitation, it does not support a finding that Plaintiff met or equaled Listing 1.02A. First and foremost, the inability to traverse uneven terrain is just one example of ineffective ambulation. Listing 1.02B2b(2) explains that to ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment. Other examples of ineffective ambulation set forth include the inability to walk without the use of a walker, two crutches or two canes, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with a single rail.

The evidence simply does not support a finding that Plaintiff has an extreme limitation of the ability to walk. Interestingly, the physician who opined that Plaintiff should avoid uneven terrain in the RFC assessment found that Plaintiff was capable of standing and/or walking at least two hours in an eight hour workday (60-90 minutes at a time, with 5 minutes rest in between), sitting for about six hours, frequently climbing ramps and stairs, and occasionally balance. AR 152-159.

Plaintiff's own testimony also undercuts his argument. He did not use an assistive device to walk, he could clean and dress himself, and he used public transportation without assistance. AR 130, 178. He testified that he volunteered in his school district's soup label collection drive, shopped for groceries once a week and carried them home himself, cooked for himself,

1  vacuumed and occasionally met friends.  AR 175-179.  He further testified that his foot was
2  never numb and he never fell down.  AR 176-177.
3        Given the overall medical evidence and Plaintiff's testimony, Plaintiff's argument is
4  without merit.  Other than the State Agency physician's lone comment, which Plaintiff takes out
5  of context, there is no evidence to support a finding that Plaintiff met or equaled Listing 1.02A.

## CONCLUSION

7        Based on the foregoing, the Court finds that the ALJ's decision is supported by
8  substantial evidence in the record as a whole and is based on proper legal standards.
9  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the
10  Commissioner of Social Security.  The clerk of this Court is DIRECTED to enter judgment in
11  favor of Defendant Jo Anne B. Barnhart, Commissioner of Social Security and against Plaintiff,
12  Murray E. Tallman.

14      IT IS SO ORDERED.

15      **Dated:   April 20, 2006**                 **/s/ Dennis L. Beck**
    3b142a                                           UNITED STATES MAGISTRATE JUDGE